

**Constitutional Limits and the Power to Create Nations**

- **Congressional Power**: If Congress lacks constitutional authority to create a new sovereign nation from U.S. territory simply by statute, then such an action is, by definition, unconstitutional—no matter how practical or convenient it may seem to policy-makers or the public. The foundational principle is that the powers of Congress are limited and enumerated in the Constitution; an act done without constitutional authority is void, regardless of later diplomatic or political recognition by other nations or branches of the U.S. government [1].

- **Inconvenience and the Rule of Law**: The argument that it would be impractical or disruptive to revisit or disturb long-established acts (such as U.S. recognition of Philippine independence) does not override the clear boundaries of constitutional power. Convenience, efficiency, or even settled international expectations cannot cure a constitutional defect if the underlying act exceeds granted powers. Judicial review exists precisely to prevent expedience from eroding constitutional limits [1].

**The Takings Clause and Sovereign Status**

- **Takings Clause Not Moored to Sovereignty**: The Fifth Amendment prohibits the government from taking private property for public use without just compensation. This protection is not, on its face, dependent on whether the territory remains part of the United States at the time the deprivation is realized. The Takings Clause binds the U.S. government to compensate its citizens for the loss of property rights caused by its own legislative or executive acts, including those that result in a change of sovereignty or status of a territory [1].

- **Loss of Property Rights**: U.S. citizens who owned property or held real property rights in the Philippines during the American period arguably suffered a government-induced loss when those rights were eliminated or substantially diminished as a direct result of U.S. action in granting independence—particularly where that loss was foreseeable and directly caused by U.S. law or executive policy, and not by the actions of a new, wholly independent sovereign [1].

- **Compensation Is a Separate Legal Question**: The present-day sovereignty of the Philippines and the decades of international recognition do not erase or invalidate the question of whether a compensable taking occurred at the moment U.S. action resulted in the loss of American-owned property interests. If a taking happened, the constitutional obligation to provide just compensation arose at that point and does not depend on present-day practicality or the current political status of the territory [1].

## Conclusion

- **Legal Inconvenience Is Irrelevant**: While unwinding decades of foreign policy may be impractical, that reality does not grant Congress more power than the Constitution allows.

- **Recognition of Independence vs. Constitutional Rights**: International recognition and status changes are important for foreign relations but do not control or eliminate constitutional protections such as those of the Takings Clause[1].

- **Takings Claims Remain Valid**: U.S. citizens' potential claims for compensation due to lost property rights continue to be legally intelligible even in light of a now-independent Philippines; current sovereignty does not retroactively legalize a deprivation that was unconstitutional when committed.

The issues you raise tap into bedrock constitutional principles—namely, that neither expediency nor the passage of time can validate actions Congress was never empowered to take, and that core constitutional rights, like protection from uncompensated takings, follow U.S. citizens wherever and however the government's own acts deprive them of property[1].



1. COMPLAINT_InRePhilippinesIndependence_ANDREWSTRAW_17JULY2025.pdf