UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANDREW U.D. STRAW, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:25-cv-00378-JAW |
| UNITED STATES and THE REPUBLIC OF THE PHILIPPINES, | ) ) ) ) |
| Defendants. | ) ) |

**ORDER AFFIRMING RECOMMENDED DECISION AND ISSUING *COK* WARNING**

On July 21, 2025, Andrew U.D. Straw, a United States citizen living in the Philippines, filed a complaint in this court against the United States and the Republic of the Philippines, demanding that this Court grant him the right to own land in the Philippines because he believes that the United States illegally granted independence to the Philippines and thereby violated the Takings Clause of the United States Constitution. *Compl.* (ECF No. 1). On October 9, 2025, the Magistrate Judge recommended to this Court that it dismiss Mr. Straw's complaint and moot any pending motions. *Recommended Decision After Prelim. Review* at 1-2 (ECF No. 10) (*Recommended Decision*). The Magistrate Judge also recommended that the Court warn Mr. Straw that filing restrictions may be in the offing because of his status as a serial litigator and certify that any appeal would not be taken in good faith. *Id.* at 2-3. On October 21, 2025, Mr. Straw objected to the recommended decision and on the same day, he filed a notice of asylum claim. *Obj. to Recommended Decision After Prelim. Review* (ECF No. 11); *Notice of Asylum Cl.* (ECF No. 12) (*Asylum Cl.*).

The Court has performed a de novo review of the Magistrate Judge's recommended decision. Accordingly, the Court OVERRULES Mr. Straw's objection and AFFIRMS the recommendation for the reasons set forth in the recommended decision and for the additional reasons set forth herein. The Magistrate Judge is correct that Mr. Straw's premise is "legally frivolous." *Recommended Decision* at 1.

> The entire premise of Straw's complaint is legally frivolous—the Philippines has been an independent country for nearly eighty years and the Takings Clause provides no remedy for Straw's disappointment in purportedly not being allowed to own land in a foreign country because of legal changes that occurred decades before he was born.

*Id.* at 1-2.

In addition, Mr. Straw's premise is ahistoric.[1] He contends that because the United States paid $20,000,000 to Spain for the Philippines and because the Philippines did not repay the United States when it transitioned to independence, Congress was without constitutional authority to give the territory of the Philippines to the Filipinos. Mr. Straw ignores the "vital distinction between incorporated territories and unincorporated territories, with the second category describing possessions of the United States not necessarily thought of as future States." *United States v. Lebrón-Caceres*, 157 F. Supp. 3d 80, 88 (D.P.R. 2016). In *Hooven & Allison Co. v. Evatt*, 324 U.S. 652 (1945), the United States Supreme Court explained that

---

[1] Mr. Straw assumes that the United States paid $20,000,000 to Spain to purchase the Philippines. However, according to the Encyclopedia Britannica, the United States nominally paid the $20,000,000 to Spain for the public buildings and public works Spain had built in the Philippines. *See The Treaty of Paris*, Encyclopedia Britannica, https://www.britannica.com/event/Treaty-of-Paris-1898 (last visited Oct. 22, 2025). If the payment was in fact nominally for the public buildings and public works built by Spain, Mr. Straw may be mistaken when he asserts that the United States bought the Philippines itself. Certainly, the effect of the Treaty of Paris of 1898 was to transfer sovereignty of the Philippines from Spain to the United States, but the Court does not need to resolve this technical historical fact to resolve Mr. Straw's lawsuit.

the Philippines were "territories belonging to, but not a part of the Union of states under the Constitution." *Id.* at 658. Thus, the Philippines was an unincorporated, not incorporated, territory, similar to Guam, American Samoa, the United States Virgin Islands, and the Northern Marianas Islands. *Lebrón-Caceres*, 157 F. Supp. 3d at 89.

> In the words of the United States Supreme Court:
>
> The United States acquired the Philippines by cession without obligation to admit them to statehood or incorporate them in the Union of states or to make them a part of the United States, as distinguished from merely belonging to it. As we have seen, they are not a part of the United States in the sense that they are subject to and enjoy the benefits or protection of the Constitution, as do the states which are united by and under it.

*Hooven & Allison*, 324 U.S. at 678; *see Lebrón-Caceres*, 157 F. Supp. 3d at 93 n.21. In *Hooven & Allison*, the Supreme Court described the incremental changes in the relationship between the United States and the Philippines, beginning with a period of governance under the war power and "[s]tep by step . . . confer[ring] greater powers upon the territorial government," and correspondingly diminishing the powers of the federal government. *Id.* at 675. "This process culminated in the Act of March 24, 1934, c.84, 48 Stat. 456, providing for the independence of the islands." *Id.*

In short, Mr. Straw's novel constitutional theories draw no support from and are contradicted by decisions of the United States Supreme Court and other federal courts, which have rejected creative arguments, like the ones postulated by Mr. Straw, that the relationship between the United States and the Philippines has somehow given birth to a spectrum of constitutional rights. *See Valmonte v. Immigr. and Naturalization Serv.*, 136 F.3d 914 (2d Cir. 1998) (rejecting claim that persons

born in the Philippines during its status as a United States territory gave rise to rights of citizenship); *Lacap v. Immigr. and Naturalization Serv.*, 138 F.3d 518, 519 (3d Cir. 1998) (same); *Rabang v. Immigr. and Naturalization Serv.*, 35 F.3d 1449, 1454 (9th Cir. 1994) (same).

This Court echoes the reasoning of the Magistrate Judge regarding Mr. Straw's dubious interpretations of history and law. The Court also agrees with the Magistrate Judge that, even if Mr. Straw's arguments were plausible, which they are not, as a United States Citizen living in the Philippines without any direct connection to the state of Maine, he has filed his case in the wrong court since he fails to allege that any of the events set forth in his complaint occurred in the state of Maine.

Consistent with the Magistrate Judge's recommendation, the Court certifies that an appeal from this order would not be taken in good faith, given the obvious infirmities in the complaint and the clear absence of venue in the District of Maine.

Finally, the Court discussed in *Andrew U.D. Straw v. AVVO Inc.*, No. 2:25-cv-00391-JAW, 2025 U.S. Dist. LEXIS 155046, at *17-18 (D. Me. Aug. 7, 2025) and in *Andrew U.D. Straw v. United States DOJ*, No. 2:25-cv-00379-JAW, 2025 U.S. Dist. LEXIS 187555, at *2-3 (D. Me. Sept. 24, 2025), the unfortunate fact is that Mr. Straw has become a serial filer of frivolous lawsuits in the District of Maine. From June 17, 2025 through July 25, 2025, he filed five lawsuits in the District of Maine. *See Straw v. Univ. of Me.*, No. 1:25-cv-00325-JAW (D. Me. June 17, 2025), *Straw v. State of Me. Vocational Rehabilitation*, No. 1:25-cv-00350-JAW (D. Me. July 9, 2025), *Straw v. United States*, No. 2:25-cv-00378-JAW (D. Me. July 21, 2025), *Straw v. United States*

*DOJ*, 2:25-cv-00379-JAW, and *AVVO*, 2025 U.S. Dist. LEXIS 155046.  Three have been dismissed; one voluntarily by Mr. Straw, *Notice of Voluntary Dismissal*, *Straw v. Univ. of Me.,* No. 1:25-cv-00325-JAW (D. Me. Oct. 1, 2025), (ECF No. 14), and two, now three, by the Court on jurisdictional and other grounds.  *Straw v. AVVO Inc.,* 2025 U.S. Dist. LEXIS 155046 (D. Me. Aug. 7, 2025); *Straw v. United States DOJ*, 2025 U.S. Dist. LEXIS 187555 (D. Me. Sep. 24, 2025).

The Magistrate Judge is now screening Mr. Straw's one remaining lawsuit: the one against the Maine Vocational Rehabilitation agency, *Screening Order*, *Straw v. State of Me. Vocational Rehabilitation,* No. 1:25-cv-00350-JAW (D. Me. Aug. 6, 2025), (ECF No. 8), to determine whether it may proceed.  As the Court observed in *AVVO*, "Mr. Straw's past history of over 150 civil actions in other federal courts combined with his recent history of five new civil actions in this District . . . convince the Court that he is a serial litigator." *AVVO*, 2025 U.S. Dist. LEXIS 155046, at *19.

Consistent with *Cok v. Family Court of Rhode Island*, 985 F.2d 32 (1st Cir. 1993),  and its requirement to warn litigants of potential filing restrictions, the Court again WARNS Mr. Straw that filing restrictions may be in the offing if he continues to file frivolous actions in this Court. *Id.* at 35.  Specifically, the Court "will contemplate a filing restriction limiting his right to file diversity-based lawsuits and lawsuits barred by the doctrine of res judicata against the parties and based on facts previously dismissed with prejudice." *Straw v. AVVO*, 2025 U.S. Dist. LEXIS 155046, at *19.

Having performed a de novo review pursuant to 28 U.S.C. § 363(b)(1)(B), the Court AFFIRMS the recommended decision and OVERRULES Andrew U.D. Straw's Objection to Recommended Decision After Preliminary Review (ECF No. 11). The Court CERTIFIES that an appeal from this order would not be taken in good faith, given the obvious infirmities in the complaint and the clear absence of venue in the district of Maine. Finally, the Court WARNS Andrew U.D. Straw that filing restrictions pursuant to *Cok v. Family Court of Rhode Island*, 985 F.2d 32 (1st Cir. 1993) may be in the offing given his status as a serial litigator and the baseless nature of the instant complaint.[2]

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of October, 2025.

---

[2] On October 21, in addition to his objection, Mr. Straw filed a document entitled Notice Re Asylum Claim. *Asylum Cl.* at 1-4. In this filing, Mr. Straw says that he objected to the characterization that he is a "frivolous litigator" and was supplying the Court with "facts so this Court is aware of the full situation." *Id.* at 1. The Court reviewed Mr. Straw's submission before issuing this order.